# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ANNA V. PEREZ, | DOCKET NUMBER |
| Appellant, | NY-0752-11-0254-I-2 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: September 11, 2014 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Albert Loew</u>, Esquire, Merrick, New York, for the appellant.

<u>Cheryl Scott-Johnson</u>, Esquire, Philadelphia, Pennsylvania, for the agency.

<u>Michael W. Gaches</u>, Esquire, Arlington, Virginia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision that reversed its May 19, 2011 indefinite suspension action.  Generally, we grant

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly modified by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2      The appellant was employed as a Federal Air Marshal (FAM) with the Transportation Security Administration (TSA), Federal Air Marshal Service (FAMS), at the agency's New York Field Office (NYFO). MSPB Docket No. NY-0752-11-0254-I-1 (I-1), Initial Appeal File (IAF), Tab 7, Subtab 4J. As a condition of employment, the appellant was required to maintain a top secret security clearance, and was subject to drug and alcohol testing. *Id*., Subtab 4I. On February 9, 2011, the appellant underwent a random drug test and tested positive for cocaine. *Id*., Subtab 4F. As a result, she was placed on administrative leave effective February 17, 2011. MSPB Docket No. NY-0752-11-0254-I-2 (I-2), Petition for Review (PFR) File, Tab 1 at 23-24. Following reconfirmation testing, a FAMS medical review officer certified the positive test result on March 1, 2011. I-1, IAF, Tab 7, Subtab 4F.

¶3        On March 11, 2011, the agency's Office of Personnel Security Division (PERSEC) issued the appellant a Notice of Determination to Revoke Access to Classified Information. *Id*., Subtab 4E. The notice indicated that the revocation decision was not final, but that the appellant's top secret clearance was suspended, effective immediately. *Id.* PERSEC explained that its determination was based on appellant's positive test result for cocaine on February 9, 2011, and the reconfirmation and certification of that result on March 1, 2011. *Id*. The notice further explained that, under agency guidelines for determining eligibility for access to classified information, the appellant's conduct was a disqualifying security concern because it called into question her judgment, reliability, and willingness to comply with rules and regulations, and caused doubt about her ability to protect classified information. *Id.* The appellant was afforded 30 days to make a reply in writing and/or in person to the Chief Security Officer (CSO), Office of Security Services and Assessments, and request review of the determination. *Id*.

¶4        On March 28, 2011, Sam Luongo, Supervisory FAM, NYFO, issued a notice proposing the appellant's indefinite suspension based on the March 11, 2011 suspension of her security clearance. *Id*., Subtab 4D. The appellant was afforded 7 calendar days from her receipt of the notice to make an oral and/or written reply together with any supporting evidence. *Id.* The appellant requested and received a 14-day extension to respond. *See id*., Subtab 4B.

¶5        Meanwhile, on April 11, 2011, the appellant's representative sent a letter to Lewis Oakcrum, Personnel Security Specialist, PERSEC, requesting the following: (1) an extension of time in which to reply to the March 11, 2011 determination; (2) copies of all the policies and procedures which the agency used regarding security clearance revocations; (3) all materials which the agency relied on to support its March 11 decision; and (4) the right to make a personal reply to the determination. I-1, IAF, Tab 17, Exhibit C. Mr. Oakcrum did not immediately respond to the letter. On April 15, 2011, the appellant requested an

additional extension of time to respond to the March 28, 2011 proposal notice, and the agency extended the deadline until May 2, 2011. *See* I-1, IAF, Tab 7, Subtab 4B. The appellant subsequently requested that the deadline be further extended until 3 days after her receipt of additional information from PERSEC, but the agency denied that request. *See id*.

¶6        On May 2, 2012, while she was still awaiting a response from Mr. Oakcrum, the appellant responded to the proposal notice orally and in writing. *See id*., Subtabs 4B, 4C. In her oral reply, the appellant stated that she never used cocaine. *See id*., Subtab 4B. In her written reply, the appellant argued, inter alia, that the agency violated due process by failing to provide her with documents and materials necessary to defend against the allegations underlying the suspension of her security clearance. *Id*., Subtab 4C. She requested to remain on administrative leave pending the outcome of further review concerning the revocation of her security clearance. *Id*.

¶7        On May 17, 2011, Larry Saez, Assistant Supervisory Air Marshal in Charge, NYFO, issued a decision upholding the proposed indefinite suspension. *Id*., Subtabs 4B. The letter indicated that the indefinite suspension would remain in effect "pending the resolution of the revocation of your Top Secret Security Clearance, or our investigation shows there is sufficient evidence either to return you to duty or support an administrative action against you." *Id*. In denying the appellant's request to remain on administrative leave, Mr. Saez explained that PERSEC exercises the function of determining suitability for maintaining access to classified information, and that his own review authority is limited to the appellant's "actual access to classified information and its relationship to [her] ability to perform the duties of a FAM." *Id*. Mr. Saez stated that the decision to indefinitely suspend the appellant was in accordance with TSA policy, and that "FAMs are placed on indefinite suspension when they do not have access to classified information because they are unable to perform their duties without

such access." *Id*. The appellant was indefinitely suspended beginning May 19, 2011. *Id*., Subtab 4A.

¶8    On June 15, 2011, the appellant filed a timely appeal of her indefinite suspension. I-1, IAF, Tab 1. In her appeal, she argued that the agency had committed harmful error and violated her due process rights by failing to provide her with the documents on which PERSEC relied before placing her on indefinite suspension. *See* I-1, IAF, Tabs 1, 11, 15; I-2, IAF, Tab 8.[2]

¶9    Meanwhile, on June 21, 2011, Mr. Oakcrum responded to the appellant's letter of April 11, 2011. I-1, IAF, Tab 17, Exhibit C. He informed the appellant's representative that in making its March 11, 2011 determination to suspend and revoke her clearance, PERSEC relied on the following documents: (1) Incident Tracking Report, dated February 9, 2011; (2) FAM Medical Officer's Reconfirmation, dated March 1, 2011; and (3) Federal Drug Testing Custody and Control Form. *Id*. In addition to these documents, the appellant was provided: (4) the Security Clearance Granted letter, dated August 18, 2009; (5) TSA Management Directive 1100.37-5, Employee Responsibilities and Conduct; (6) TSA FAMS Directive ADM 3700, Employee Responsibilities and Conduct; and (7) Executive Order 12563, Drug-Free Federal Workplace. *Id*. The appellant was again afforded an opportunity to respond to the March 11, 2011 notice of determination. *Id*. Following the appellant's oral and written responses, CSO Thomas Wiley issued a Notice of Review of Determination, dated January 18,

---

[2] On October 10, 2011, the administrative judge dismissed the appeal without prejudice to await the outcome of the petitions for review then pending in *McGriff v. Department of the Navy*, 118 M.S.P.R. 89 (2012); *Gaitan v. Department of Homeland Security*, 118 M.S.P.R. 180 (201); *Gargiulo v. Department of Homeland Security*, 118 M.S.P.R. 137 (2012), *aff'd*, 727 F.3d 1181 (Fed. Cir. 2013); and *Buelna v. Department of Homeland Security*, 118 M.S.P.R. 115 (2012). I-1, IAF, Tab 31, Initial Decision. Following the issuance of the Board's final decision in *McGriff* on April 26, 2012, the appellant's initial appeal was deemed automatically refiled, and the parties were provided the opportunity to address the due process issues discussed in *McGriff* and its companion cases. I-2, IAF, Tabs 1, 3-4. The decisions in question have since been modified by *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262 (2014).

2012, upholding the Notice of Determination and revoking the appellant's security clearance. *See* I-2, IAF, Tab 11. The appellant subsequently appealed Mr. Wiley's decision to the agency's Security Appeals Board (SAB). *Id.*

¶10       On July 13, 2012, the administrative judge issued an initial decision reversing the indefinite suspension on due process grounds. I-2, IAF, Tab 12, Initial Decision (ID). In doing so, the administrative judge cited *Gaitan*, 118 M.S.P.R. 180, ¶ 23, for the proposition that "due process requires . . . that the appellant receive a meaningful opportunity to respond to someone with authority to change the outcome of the security clearance determination in either the security clearance proceeding or the adverse action proceeding." ID at 19. The administrative judge found that the appellant did not receive a meaningful opportunity to contest the clearance suspension prior to the imposition of indefinite suspension, because she had not yet received the materials on which PERSEC relied in suspending her clearance, and because Mr. Saez had no authority to consider her claims regarding the accuracy of her drug test. ID at 14-20. The administrative judge ordered the agency to cancel the indefinite suspension and restore the appellant effective May 19, 2011. ID at 14-20. He further directed that, in the event either party filed a petition for review, the agency should provide interim relief in accordance with 5 U.S.C. § 7701(b)(2)(A).

¶11       On August 17, 2012, the agency filed the instant petition for review, contesting the administrative judge's finding that the appellant had been denied due process. PFR File, Tab 1. As evidence of compliance with the interim relief order, the agency provided a declaration from the Chief of the FAMS Business Management Office, who stated that the appellant had been restored to paid administrative leave status effective July 13, 2012, but could not be returned to full operational duty due to her lack of a security clearance. *Id.* at 20-21. The agency also provided a copy of the February 16, 2011 notice placing the appellant on administrative leave, the Standard Form 50 recording her return to duty, and

an earnings and leave statement indicating her return to pay status. *Id*. at 23-28. However, on September 11, 2012, the agency again proposed to indefinitely suspend the appellant based on the revocation of her clearance, pending the result of her appeal to SAB. *See* PFR File, Tab 1 at 13-14; *see also Perez v. Department of Homeland Security*, MSPB Docket No. NY-0752-13-0061-I-1, Initial Decision (Mar. 7, 2013).

¶12    On November 5, 2012, following a series of extensions, the appellant filed her response to the agency's petition for review in this appeal. PFR File, Tab 8.[3] In her response, she argued, inter alia, that the agency had violated the interim relief order by issuing the second notice of proposed indefinite suspension. *Id*. at 13-14. Shortly thereafter, the agency issued a decision upholding the second proposed indefinite suspension, effective November 21, 2012. *See Perez*, MSPB Docket No. NY-0752-13-0061-I-1. The appellant again appealed to the Board, and her appeal was dismissed without prejudice pending the outcome of the instant petition for review. *Id.*

¶13    On January 9, 2014, following the issuance of the U.S. Court of Appeals for the Federal Circuit's decision in *Gargiulo*, 727 F.3d 1181, the Board invited the parties to address the possible application of *Gargiulo* to the appellant's due process claim. PFR File, Tab 11. Both parties responded. PFR File, Tabs 14, 16.

## ANALYSIS

The agency complied with the interim relief order.

¶14    Under 5 U.S.C. § 7701(b)(2)(A), an appellant who obtains relief in an initial decision is entitled to the relief provided in the decision effective upon the making of the decision and remaining in effect pending the outcome of the petition for review, unless (i) the administrative judge determines that granting

---

[3] Although the deadline for the appellant's response was October 29, 2012, *see* PFR File, Tab 6, we find that she has established good cause for the delay in filing, and therefore GRANT her motion to accept the pleading.

such relief is not appropriate, or (ii) the relief granted in the decision provides that the employee return or be present at the place of employment, and the agency determines that the return or presence of the employee would be unduly disruptive to the work environment. In the latter event, the appellant must receive pay, compensation, and all other benefits as terms or conditions of employment during the period pending the outcome of any petition for review. 5 U.S.C. § 7701(b)(2)(B). Here, the agency has presented unrebutted evidence that as of August 17, 2012, when it filed its petition for review, it had complied with the interim relief order by restoring the appellant to her original position, albeit on administrative leave status, retroactive to the date of the initial decision.[4] However, the interim order was still in effect when the agency later proposed and effected the appellant's second indefinite suspension.

¶15    The Board has held that an interim relief order does not insulate an appellant from a subsequent adverse action, so long as that action is not inconsistent with the interim relief order. *Barcliff v. Department of the Navy*, 62 M.S.P.R. 428, 433 (1994). The appellant contends that the second proposed indefinite suspension is inconsistent with the interim relief order because it was based on "the same facts and laws that existed at the time of the issuance of the first decision of Indefinite Suspension." PFR File, Tab 8 at 13. However, nothing in the initial decision precludes the agency from initiating a second indefinite suspension action. *See Barcliff*, 62 M.S.P.R. at 432-33. Moreover, whereas the indefinite suspension on appeal was based on the suspension of the appellant's clearance on March 11, 2011, the second indefinite suspension was

---

[4] The record reflects that the appellant was already on administrative leave at the time the indefinite suspension was proposed. *See* PFR File, Tab 1 at 23-24. However, assuming arguendo that the interim relief order required the appellant's return to duty, we would find that the agency made an implicit undue disruption determination by providing a compelling reason for the appellant's placement on administrative leave, i.e., her lack of a security clearance. *See Lambert v. Department of the Navy*, 85 M.S.P.R. 130, 137 (2000) (Vice Chair Slavet, concurring).

proposed and effected on different grounds, namely the revocation of her clearance on January 18, 2012. Although we do not presently address the merits of the second indefinite suspension, which is the subject of a separate appeal, we find that it is not inconsistent with the interim relief order, and therefore does not warrant dismissal of the agency's petition.

<u>The appellant was denied due process with respect to the indefinite suspension.</u>

¶16        While it is well established that no one has a right to a security clearance or access to classified information, a tenured federal employee nonetheless has a property interest in continued employment. *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996). Typically, this is so because the statutory federal employment scheme provides that the agency may take an adverse action against the employee only for unacceptable performance, pursuant to 5 U.S.C. § 4303, or for such cause as will promote the efficiency of the service, pursuant to 5 U.S.C. § 7513. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1375 (Fed. Cir. 1999). In this case, the adverse action on appeal is not governed by statute, but rather by the provisions of TSA Management Directive (MD) 1000.75-3 and the accompanying Handbook, which govern disciplinary actions against TSA employees. *See Buelna*, 121 M.S.P.R. 262, ¶ 13. However, MD 1100.75-3, § 6(E) similarly provides that a tenured TSA employee may only be suspended, removed, or demoted for unacceptable performance or for such cause as will promote the efficiency of the service. Consequently, the appellant's indefinite suspension deprived her of a property interest cognizable under the Fifth Amendment. *See Buelna*, 121 M.S.P.R. 262, ¶ 13. The Board has authority to determine whether the agency provided the appellant due process rights in connection with that action. *Id.*, ¶ 15.

¶17        At the time the initial decision was issued, the Board had recently held that, in an indefinite suspension based on the suspension of a security clearance, due process requires that the employee receive a meaningful opportunity to respond to

someone with authority to change the outcome of the security clearance determination in either the security clearance proceeding or adverse action proceeding. *Gaitan*, 118 M.S.P.R. 180, ¶ 23; *Gargiulo*, 118 M.S.P.R. 137, ¶ 20. Relying on *Gaitan*, the administrative judge concluded that the appellant was deprived of due process because she did not receive a meaningful opportunity to contest the suspension of her security clearance prior to being indefinitely suspended. However, the Board has since held that the holding of *Gaitan* was incorrect, because an employee has no property interest in a security clearance. *Buelna*, 121 M.S.P.R. 262, ¶ 24 (citing *Gargiulo*, 727 F.3d at 1185). We therefore modify the initial decision to consider the appellant's due process claim in light of *Buelna*.

¶18        Due process requires, at a minimum, that an employee being deprived of her property interest be given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Because the appellant was afforded an opportunity to respond to the proposed adverse action prior to being suspended, we conclude that the hearing occurred at a "meaningful time." *See Buelna*, 121 M.S.P.R. 262, ¶ 21. Our inquiry therefore proceeds to whether the appellant was heard in a "meaningful manner" that provided sufficient protection against an erroneous deprivation of her property interest. *See id.*

¶19        In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-46 (1985), the U.S. Supreme Court explained that for purposes of reaching an accurate decision, the opportunity to respond to a proposed removal is important for two reasons. First, an adverse action will often involve factual disputes and consideration of the employee's response may clarify such disputes. *Id.*; *Stone*, 179 F.3d at 1376. Second, "[e]ven where the facts are clear, the appropriateness or necessity of the [penalty] may not be," and "in such cases" the employee must receive a "meaningful opportunity to invoke the discretion of the decision maker." *Loudermill*, 470 U.S. at 543. Thus, "the employee's response is

essential not only to the issue of whether the allegations are true, but also with regard to whether the level of penalty to be imposed is appropriate." *Stone*, 179 F.3d at 1367. Although the appellant in this case was not removed, the same considerations identified in *Loudermill* are present in determining whether an employee who is indefinitely suspended based upon the loss of a security clearance received an adequate opportunity to contest the proposed action. *See Buelna*, 121 M.S.P.R. 262, ¶ 22.[5] We address them in turn.

¶20     As to the facts underlying the agency's charge, the record reflects, and the parties do not dispute, that the indefinite suspension was based on the suspension of the appellant's clearance, not the merits or factual predicate of the clearance suspension. I-1, IAF, Tab 7, Subtabs 4B, 4D. Consequently, the only relevant factual disputes that could have been raised with respect to the charge were whether the appellant's position required a security clearance and whether the clearance was suspended. *See Buelna*, 121 M.S.P.R. 262, ¶ 23. Because the merits of the agency's charge do not hinge on any factual disputes concerning the merits of the clearance suspension, the appellant's due process right to contest the charge was not compromised by the agency's failure to provide her with the documentation on which PERSEC relied prior to indefinitely suspending her.

¶21     With regard to penalty, an employee has a due process right to invoke the deciding official's discretion to the extent that the appropriateness or necessity of the penalty is in doubt. *Id.*, ¶ 27 (citing *Loudermill*, 470 U.S. at 543). Due process does not require that the deciding official consider alternatives that are prohibited, impracticable, or outside management's purview. *See Buelna*, 121 M.S.P.R. 262, ¶ 27. Thus, the appellant's due process rights were not

[5] In reaching that conclusion in *Buelna*, we considered the factors set forth in *Mathews*, 424 U.S. at 335, namely: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest. *See Buelna*, 121 M.S.P.R.262, ¶¶ 16-22. It is unnecessary to reiterate the *Mathews* factors analysis in this appeal. *See id.*, ¶ 18.

compromised by the deciding official's inability to reverse the suspension of her clearance, as that decision was solely within the purview of PERSEC.

¶22        However, to the extent there may have existed other alternatives to suspension without pay, the appellant had a due process right to invoke the discretion of a deciding official with authority to select such alternatives. *Id.*, ¶ 28. In this regard, we note that TSA policy does not explicitly require that an indefinite suspension be imposed in every case where an employee's required security clearance has been suspended. Rather, it provides only that an indefinite suspension "may be imposed" in such cases. *See* I-1, IAF, Tab 7, Subtab 4G, MD 1100.75-3 Handbook (2009), § J(1).[6] We therefore conclude that management was not precluded from choosing an alternative course of action, such as leaving the appellant on administrative leave pending the outcome of her response to the CSO. The question therefore arises whether the appellant had a meaningful opportunity to invoke the discretion of a deciding official with authority to select such an alternative.

¶23        We find that the appellant did not receive such an opportunity because at the time Mr. Saez issued the decision, he did not regard himself as having authority to do anything other than impose the proposed indefinite suspension. In his decision letter, Mr. Saez quoted the TSA policy described above, but incorrectly paraphrased it as a blanket requirement that "FAMs are placed on indefinite suspension when they do not have access to classified information because they are unable to perform their duties without such access." I-1, IAF, Tab 7, Subtab 4B. In addition, Mr. Saez stated that his review authority was strictly limited to review of the appellant's actual access to classified information and its relation to her ability to perform FAM duties, and that the "sole purpose" of his meeting with the appellant "was to address the suspension of [the appellant's] security clearance" and render a decision. *Id*. Thus, it appears that

---

[6] This provision is located at § I(1) in the most recent edition of the Handbook.

Mr. Saez erroneously believed that TSA policy required the appellant's indefinite suspension, and that he lacked the authority to consider mitigating factors that might weigh in favor of the appellant's request to remain on administrative leave. Indeed, at the hearing, Mr. Saez conceded that he questioned the need to have an oral reply to the proposal notice other than simply because appellant had a right to have one. Hearing Transcript at 19.

¶24      When pressed as to whether there were any circumstances in which he might not have imposed the proposed indefinite suspension, Mr. Saez speculated that if he had determined that a "clear mistake" was made, e.g., if the appellant claimed that she was absent when the test was administered, or was taking medication for an injury, he would have forwarded the matter back to PERSEC for further inquiry. *See id*. at 30-33, 39-57. However, even if Mr. Saez's testimony could be reconciled with the language of the decision letter, in which he denied having any authority to review the factual basis for the clearance suspension, any discretion he may have had to consider a claim of "clear mistake" was insufficient to provide due process. Because TSA policy did not mandate that Mr. Saez indefinitely suspend the appellant based on the suspension of her clearance, it was an open question whether an indefinite suspension was appropriate or necessary, even in the absence of a factual dispute concerning the charge. Under these circumstances, the appellant was entitled to a meaningful opportunity to invoke the decision maker's discretion to choose an alternative. *See Loudermill*, 470 U.S. at 543; *Stone*, 179 F.3d at 1376. The appellant did not receive that opportunity, and was thus deprived of due process.

## ORDER

¶25      We ORDER the agency to cancel the suspension and restore the appellant effective May 19, 2012. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶26    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶27    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  See 5 C.F.R. § 1201.181(b).

¶28    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶29    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

FOR THE BOARD:                           _____
                                         William D. Spencer
                                         Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



# NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.